**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DENCIE R. MCCAUSE, | CASE NO. 4:16-cv-00032-CVE-GBC |
| Plaintiff, | |
| v. | (MAGISTRATE JUDGE COHN) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | |

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Dencie R. McCause ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## I. STANDARD OF REVIEW

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988) (quoting <u>Consolidated</u> <u>Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." <u>Id.</u> The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. <u>See</u> <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. <u>See</u> <u>White v. Barnhart</u>, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.    Procedural History**

On August 6, 2012, Plaintiff filed a claim for disability insurance benefits, alleging disability as of December 31, 2007. (Tr. 239-40). At the administrative law judge ("ALJ") hearing, Plaintiff amended the alleged onset date to November 5, 2011, Plaintiff's 50th birthday. (Tr. 66).

On November 27, 2013, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 66-79). On May 26, 2015, the agency's Appeals Council denied Plaintiff's request for review, and this appeal followed. (Tr. 8-11).

**B.    Social Security Insured Status**

Under Title II of the Act, the claimant is required to establish that he became disabled prior to the expiration of his Social Security insured status. <u>See, e.g.,</u> <u>Henrie v. U.S. Dep't of Health &</u> <u>Human Servs.</u>, 13 F.3d 359, 360 (10th Cir. 1993); <u>Potter v. Sec'y of Health & Human</u> <u>Servs.</u>, 905 F.2d 1346, 1347-48 (10th Cir. 1990). Therefore, the period of alleged disability at issue (the relevant period) is November 5, 2011 (Plaintiff's alleged onset of disability date), through the date his insured status expired on December 31, 2012.

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges four errors: (1) the ALJ's residual functional capacity ("RFC") is unsupported by the third party statements; (2) the ALJ's RFC is unsupported by the medical opinions of record; (3) the ALJ's RFC is internally flawed; and (4) the ALJ's credibility determination is unsupported by substantial evidence of the record as a whole. (Pl. Br. at 1, Doc. 12).

### A.     RFC and Third Party Statements

### 1.     Social Security Administration ("SSA") Interview

Plaintiff contends the ALJ did not consider a statement from a third party SSA employee. (Pl. Br. at 1-2). On August 6, 2012, SSA employee B. Allinder interviewed Plaintiff at a field office and observed Plaintiff "did appear to have some difficulty standing after sitting for the interview." (Pl. Br. at 1-2; Tr. 249-51). Plaintiff states under SSR 96-7p, the ALJ must consider employee observations during interviews.

> The adjudicator must also consider any observations about the individual recorded by SSA employees during interviews, whether in person or by telephone. In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.

Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p (S.S.A. July 2, 1996). Although the ALJ must consider observations by SSA employees, the ALJ is not required to discuss every piece of evidence in the record. Rather the ALJ is required to "discuss the uncontroverted evidence he chooses to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

The ALJ found Plaintiff had a severe impairment of degenerative disc disease of the spine. (Tr. 68). Following this determination, the ALJ decided Plaintiff had the following RFC, which included limitations for standing and walking:

> lift or carry up to 20 pounds occasionally and up to 10 pounds frequently, and can push or pull with either the upper or lower extremities consistent with the limitations on lifting and carrying. Claimant can stand or walk 6 hours out of an 8-hour workday and can sit for 2 hours out of an 8-hour workday or for longer periods if a full 6 hours of standing and walking is not required. In other words, the claimant has a light exertional RFC … However, cannot do work involving stooping, and only occasional kneeling, crawling, or crouching.

(Tr. 69). The ALJ reviewed the record to determine the RFC, which accurately reflected Plaintiff's limitations, and therefore, any failure to reference the employee's statement was harmless error.

Plaintiff is 52 years old and has not worked in five years because of back pain. (Tr. 70). He saved money in the past and sold his shop, so there are no bills outstanding and his house was paid off 22 years ago. (Tr. 70). He had a plumbing and heating business for 30 years. (Tr. 70). He has not had surgery but does stretching exercises. (Tr. 70). He takes methadone 10mg twice day and Dilaudid 4mg every 6 hours. (Tr. 71). He has been going to the pain management physician for two and one-half years. (Tr. 71). He has pain in the low back, left leg and both hips starting at the belt line, so he wears elastic shorts. (Tr. 71). He lies down 5 or 6 times a day for an hour at a time. (Tr. 71). He can lift a gallon of milk but does not do much around the house except wipe off the kitchen table. (Tr. 71). His wife and 15-year-old son do the chores. (Tr. 71). He watches television, uses the computer, and reads. (Tr. 71).

On September 24, 2012, Plaintiff had a consultative examination with Bryan Terry Smedley, D.O. (Tr. 71 (citing Tr. 348-54)). Plaintiff stated he injured his back in 1993 while pulling a sewer line cleaner. (Tr. 71). He reported constant pain in his low back and bilateral lower extremities. (Tr. 71). His only relief is narcotic pain medication. (Tr. 71). There was no atrophy noted, and heel / toe walking normal. (Tr. 71-72). Straight leg raising was negative bilaterally in

sitting and supine positions. (Tr. 72). Plaintiff had decreased range of motion in lumbosacral spine with pain on flexion, extension, and left and right bending. (Tr. 72). Plaintiff did not require an assistive device to ambulate. (Tr. 72). Dr. Smedley diagnosed chronic low back pain, bilateral lower extremity neuropathy, mild multilevel spondylosis and degenerative facet arthropathy on CT of the lumbar spine, disc bulge at L5-S1 on CT scan of lumbar spine and hypertension. (Tr. 72).

The ALJ considered the relevant evidence regarding spine impairment. Thus, the ALJ's failure to mention a single instance of difficulty standing up by a non-medical source was not error, and if it was error, it was harmless. It was reasonable for the ALJ to rely on the opinion of the doctor who reviewed the entire record. The one-time observation was not significantly probative to warrant a remand for consideration of the evidence. In Sardono, a recent case out of the Western District of Oklahoma, the Court addressed the same issue and found the error, if any, harmless.

> Although the ALJ did not expressly address this evidence in his opinion, the one-time contact with the SSA employee does not contain any opinion that is particularly probative nor did it provide significant evidence supporting disability…
>
> Additionally, any error related thereto is harmless. [The employee's] observations are largely cumulative. See Davis v. Astrue, 237 F. App'x 339, 342 (10th Cir. 2007) (finding no error in ALJ's failure to discuss testimony of claimant's wife where that testimony was largely cumulative of the claimant's testimony). The record is replete with evidence that Plaintiff suffers pain due to his back impairment and that he must change positions as a result of that pain—evidence specifically addressed by the ALJ's RFC which provides an option to sit and stand at will. See Keyes–Zachary v. Astrue, 695 F.3d 1156, 1173 (10th Cir. 2012) (ALJ's failure to mention non-determinative factor was harmless error given circumstance of case).

See Sardono v. Colvin, 2016 WL 1618271, at *6 (W.D. Okla. Mar. 11, 2016). Similarly in this case, the observation by the SSA employee was not particularly probative nor did it provide significant evidence supporting disability (see Sardono, 2016 WL 1618271, at *6); the ALJ is not required to discuss every piece of evidence (see Clifton, 79 F.3d at 1009–10); any error related

thereto is harmless, as the employee's observations are largely cumulative (see Davis, 237 Fed. Appx. at 342); and the ALJ's RFC provided limitations for sitting, standing, and walking (see Keyes–Zachary, 695 F.3d at 1173).

**B.**      **RFC and the Medical Opinions of Record**

    **1.**      **State Agency Physicians Kavitha Reddy, M.D. and Dr. Smedley**

Plaintiff states the ALJ should not have relied on the opinion of the state agency physician, Dr. Reddy, as she erroneously relied on state agency physician Dr. Smedley. (Pl. Br. at 2). Plaintiff argues Dr. Reddy should not have relied on Dr. Smedley's opinion, as Dr. Smedley is an otolaryngologist (ear, nose, and throat doctor "ENT"), and thus, lacks expertise to evaluate degenerative disc disease of the lumbar spine. (Pl. Br. at 2-3). In a recent case from the District Court of New Mexico, the Court reviewed Tenth Circuit law for evaluating state agency opinions in the ALJ decision.

> [E]very medical opinion received must be evaluated. 20 C.F.R. § 404.1527(c) (2016); Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012) ("It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions."). An ALJ is not bound by any findings made by state agency medical consultants; however, state agency medical consultants are considered highly qualified physicians who are experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(e)(2)(i). The Tenth Circuit has recognized that such consultants' opinions are often fully relied on as the dispositive basis for RFC findings. See Chapo v. Astrue, 682 F.3d 1285, 1291 (10th Cir. 2012). When an ALJ considers the opinions of state agency medical consultants, the ALJ will consider the consultant's medical specialty, the supporting evidence in the case record, supporting explanations, and any other relevant factors. 20 C.F.R. § 404.1527(e)(2)(ii).

Evans-Guillen v. Berryhill, No. CV 16-327 GJF, 2017 WL 1491894, at *7 (D. N.M. Apr. 12, 2017). From a review of the record, the ALJ properly weighed the opinions of the state agency physicians in accordance with Tenth Circuit precedent and the Code of Federal Regulations.

On October 4, 2012, a state agency physician, David Bailey, M.D., reviewed the record and found Plaintiff capable of performing the exertional requirements of medium work, i.e., lift 50

pounds occasionally or 25 pounds frequently; stand or walk 6 hours in an 8-hour day; and sit 6 hours in an 8-hour day. (Tr. 163-65). On February 13, 2013, a subsequent state agency physician, Dr. Reddy, reviewed the record and found Plaintiff capable of performing the exertional requirements of light work, i.e., lift 20 pounds occasionally or 10 pounds frequently; stand or walk 6 hours in an 8-hour day; and sit for 6 hours in an 8-hour day. (Tr. 174-76).

Dr. Reddy reviewed the September 24, 2012 consultative examination by Dr. Smedley. (Tr. 173). Plaintiff reported pain since 1993. (Tr. 173). Plaintiff had equal range of motion throughout with no cyanosis, claudication, or edema present. (Tr. 175). Plaintiff was neurologically grossly intact with grip and great toe strength of 5 out of 5 equal bilaterally. (Tr. 175). Gait was stable with normal speed and stability and no limp. (Tr. 175). Plaintiff did not require assistive devices. (Tr. 175). With the exception of 20-degree back extension and 60-degree back flexion, range of motion testing was within normal limits. (Tr. 175). Plaintiff's heel / toe walk was within normal limits bilaterally. (Tr. 175). Straight leg raise was negative in both seated and supine positions. (Tr. 175). Dr. Reddy also noted in October 2012, the disability determination by Dr. Bailey found Plaintiff capable of medium work. (Tr. 173 (citing Tr. 163-65)).

Dr. Reddy also reviewed the record from Joshua Livingston, M.D., with South Pointe Pain Management. (Tr. 175 (citing Tr. 359, 357, 355 & 361)). On July 26, 2012, Dr. Livingston reported Plaintiff continued to do well with medications and the pain was well-controlled. (Tr. 175 (citing Tr. 361)). On September 20, 2012, Plaintiff's progress report with pain management showed medication helping most of the time and overall happy with treatment. (Tr. 175 (citing Tr. 359)). On November 15, 2012, Plaintiff's progress report showed pain well-controlled, lumbar tenderness to palpitation with spasm. (Tr. 175 (citing Tr. 357)). On December 13, 2012, Dr. Reddy noted Plaintiff's follow up reported tenderness to palpitation with spasm and antalgic gait. (Tr. 175

(citing Tr. 355)). Medications included oxycodone, methadone, and valium. (Tr. 175 (citing Tr. 355)).

Dr. Reddy noted on May 8, 2012, a CT of the lumbar spine reported mild multi-level spondylosis and degenerative facet arthropathy. (Tr. 176). Dr. Reddy evaluated Plaintiff's activities of daily living ("ADLs) as of August 15, 2012. (Tr. 176). ADLs indicated back pain affects dressing and bathing and needs help using the toilet. (Tr. 176). Plaintiff did not prepare meals, do house or yard work, or shop. (Tr. 176). Plaintiff went outside one to two times a day. (Tr. 176). Plaintiff drove and rode in a car for transportation and could go out alone. (Tr. 176). Plaintiff is able to walk one hundred feet before needing to rest one to two minutes. (Tr. 176).

Dr. Reddy found the medical evidence did not fully support the degree of physical limitation described by Plaintiff. (Tr. 176). Dr. Reddy concluded Plaintiff retained the capacity to perform work related activities consistent with the RFC [of light work]. (Tr. 176-77).

Code of Federal Regulations, Sections 404.1527 and 416.927 provide a list of factors for the ALJ to consider when evaluating medical opinions.

> (1) Examining relationship … we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.

> (2) Treatment relationship … we give more weight to treating sources with detailed, longitudinal picture of impairment(s)

> (3) Supportability … relevant evidence, particularly medical signs and laboratory findings … supporting explanations

> (4) Consistency … with the record as a whole

> (5) Specialization. We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.

> (6) Other factors … the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, and the extent to which a medical source is familiar with the other information in your case record.

See 20 C.F.R. §§ 404.1527 and 416.927. Thus, in evaluating Dr. Smedley's opinion under the factors listed in Sections 404.1527 and 416.927, Dr. Smedley examined Plaintiff; provided relevant evidence, medical signs and findings, and supporting explanations; the opinion was consistent with the record as a whole; and Dr. Smedley, as state agency physician, is familiar with disability programs and their evidentiary requirements. Even though Dr. Smedley was not a specialist in back problems, the medical opinion satisfied most of the remaining factors under Sections 404.1527 and 416.927. Therefore, Dr. Reddy could properly rely on Dr. Smedley's opinion, and the ALJ could properly rely on Dr. Reddy's opinion and give it substantial weight. (Tr. 72).

Plaintiff states Dr. Reddy did not examine Plaintiff. (Pl. Br. at 3). However, examination is only one of the factors under Sections 404.1527 and 416.927. Moreover, Dr. Reddy relied on the findings of Dr. Livingston and Dr. Smedley, who did examine Plaintiff, in addition to reviewing the CT scan report. State agency physicians are acceptable medical sources whose opinions ALJs are entitled to consider. See 20 C.F.R. § 416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider). The ALJ may rely on a state agency consultant if the ALJ explains the basis for the weight given. The undersigned finds no error as to the ALJ's reliance on the state agency physicians.

### 2.      ALJ Duty to Develop

Plaintiff contends the ALJ should have further developed the record by ordering another physical consultative examination or an opinion from a treating physician. (Pl. Br. at 3-4). From the review of the record by the ALJ, the treating records from Dr. Livingston, the consultative

examination from Dr. Smedley, and the disability determination from Dr. Reddy, the ALJ had

substantial evidence to make a decision without ordering a second consultative examination.

"In the absence of such a request by counsel, we will not impose a duty on the ALJ to order

a consultative examination unless the need for one is clearly established in the record. Hawkins v.

Chater, 113 F.3d 1162, 1168 (10th Cir. 1997)." Wilson v. Barnhart, 87 F. App'x 689, 693 (10th

Cir. 2004) (unpublished).[2] The record was sufficient for the ALJ to render a decision regarding

Plaintiff's disability claim, and the ALJ was not required to further develop the record.

**C.     RFC and Plaintiff's Limitations**

**1.     Plaintiff's Standing, Walking, and Sitting Limitations**

Plaintiff states the ALJ's RFC for standing, walking, and sitting is inconsistent with light

work. (Pl. Br. at 4). The ALJ found Plaintiff had the RFC to stand or walk 6 hours out of an 8-hour

workday and can sit for 2 hours out of an 8-hour workday or for longer periods if a full 6 hours of

standing and walking is not required. (Tr. 69). Plaintiff states this RFC is unclear and implies

Plaintiff has the opportunity to alternate between sitting and standing, which would preclude light

work under SSR 83-12 and 96-9p. (Pl. Br. at 4).

However, the RFC to sit longer hours if less standing or walking is not required does not

preclude light work under SSR 83-12 and 96-9p. In the District Court of Kansas, a plaintiff made

a similar argument regarding sitting, standing, and performing sedentary work in the RFC:

> Plaintiff argues that the requirement in the RFC that she "needs to alternate
> sitting/standing every 30 minutes" precludes her from performing all sedentary
> jobs. She contends that the RFC's sit/stand mandate requires her to sit 3.5 hours a
> day, and stand 3.5 hours a day. Sedentary work generally requires the ability to sit
> for six hours, which she maintains prevents her from all sedentary work. See SSR
> 96–9p, 1996 WL 374185, at *3 (noting that for sedentary work "sitting would
> generally total about 6 hours of an 8–hour workday"). The Court disagrees.

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for
their persuasive value."

Harrison v. Colvin, No. 14-CV-02339-DDC, 2015 WL 5730611, at *22 (D. Kan. Sept. 30, 2015).

The undersigned agrees with the court in Harrison, and an RFC with allowances for sitting and

standing does not automatically prevent Plaintiff from performing all work. The Harrison court

went on to discuss SSR 83-12 and SSR 96-9p and limitations in sitting and standing:

> SSR 83-12 addresses special situations where a claimant needs to alternate between sitting and standing:
>
> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work ... or the prolonged standing or walking contemplated for most light work.... There are some jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice.... However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.
>
> SSR 83–12, 1983 WL 31253, at *4 (Jan. 1, 1983). SSR 96–9p elaborates on RFC assessments where an individual needs to "alternate the required sitting of sedentary work by standing (and possibly, walking) periodically," noting "[i]t may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." SSR 96–9p, 1996 WL 374185, at *7. Here, the ALJ did just that—she consulted a vocational expert.

Harrison, 2015 WL 5730611, at *22. Social Security Ruling 96-9p is specifically tailored to

sedentary jobs; however, the ALJ would have the same requirement to consult a vocational expert

in instances of light work with limitations. In this case, the ALJ questioned the vocational expert

as to whether jobs existed with these specific standing, walking, and sitting limitations. The

vocational expert identified three jobs Plaintiff could perform: small product assembler, bottling

line attendant, and production bakery worker. (Tr. 78-79). Thus, the ALJ satisfied the requirements

of SSR 83-12 and SSR 96-9p, to the extent they would apply to light work. In Rivera, the District

Court of New Mexico summarized Tenth Circuit precedent of exertional and nonexertional impairments and questioning the vocational expert.

> "Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991). "[T]he hypothetical questions posed to the VE to assist with the step-five determination must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record." Grotendorst v. Astrue, 370 F. App'x 879, 883 (10th Cir. 2010) (citing Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996)). A VE's response to a hypothetical question that meets this standard constitutes substantial evidence for an ALJ's disability decision. See Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000).

Rivera v. Berryhill, 2017 WL 1906961, at *7 (D. N.M. Mar. 16, 2017). Similarly, the ALJ's questioning to the vocational expert and the response provides substantial evidence for the decision.

Finally, in Nelson, the Western District of Oklahoma found that an RFC's unusual "sit / stand alternating limitation" was not a basis to challenge its sufficiency.

> Plaintiff fails to cite to any authority in which a court has ruled that an RFC requirement that Plaintiff "periodically" alternate sitting and standing was insufficient. Rather than set forth evidence indicating Plaintiff cannot perform the identified jobs, she has challenged the RFC primarily on the basis of its format. Unlike the cases upon which Plaintiff relies in asserting this challenge, the ALJ relied on completed consultative examinations, included information in his RFC regarding Plaintiff's ability to stand, sit and walk for specific periods of time within a workday and incorporated into the RFC the consultative examiner's specific findings regarding Plaintiff's need to periodically alternate sitting and standing. Based on the DOT guidelines, SSR 83-12 and related case law, the Court concludes that the VE's testimony provides substantial support for the ALJ's decision, thus, it is hereby AFFIRMED.

Nelson v. Colvin, 2015 WL 5231131, at *9 (W.D. Okla. Sept. 8, 2015), aff'd, 655 F. App'x 626 (10th Cir. 2016). In this case, Plaintiff states the RFC precludes all light work. (Pl. Br. at 4). However, district courts in the Tenth Circuit as well as the Tenth Circuit itself demonstrate the ALJ's RFC was sufficient, and the vocational expert testimony satisfied the requirements of SSR

83-12 and 96-9p. See Hargis, 945 F.2d at 1491; see also Grotendorst, 370 F. App'x at 883 (citing Decker, 86 F.3d at 955; and Qualls, 206 F.3d at 1373.

### 2.     Plaintiff's Limitation for No Stooping

Plaintiff also contends the limitation for no stooping in the RFC also precludes all light work under SSR 83-14. (Pl. Br. at 4-5). In the RFC, the ALJ found Plaintiff "cannot do work involving stooping, and only occasional kneeling, crawling, or crouching." (Tr. 69).

"[T]he frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist." SSR 83-14, 1983 WL 31254, at *4. "Any limitation on [this functional ability] must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." Id. That is precisely what occurred here—the ALJ obtained the testimony of a vocational expert to assist him in understanding the effects on the occupational base. As Plaintiff acknowledges (Pl. Br. at 5), the vocational expert testified that, pursuant to the Dictionary of Occupational Titles, the three identified occupations (small product assembler, bottling line attendant, and production bakery worker) do not require the activity of stooping. (Tr. 141).

Plaintiff further argues SSR 00-4p prevents a vocational expert from testifying contrary to the SSA's policies and procedures. (Pl. Br. at 5). Plaintiff does not explain how the vocational expert testified inconsistently. (Pl. Br. at 5). At the hearing, Plaintiff's counsel questioned the vocational expert whether the jobs require stooping, and the expert said that by definition, the jobs do not require stooping. (Tr. 141). The undersigned does not see any conflict in the vocational expert's testimony and the SSA. Therefore, the ALJ did not err in finding Plaintiff could perform light work with limitations to satisfy the RFC.

**D.     Credibility Determination**

**1.       Activities of Daily Living**

Plaintiff states the ALJ erred in finding Plaintiff not entirely credible based on activities of

daily living. (Pl. Br. at 5). Although recently the SSA has eliminated the use of the term

"credibility" from the agency's sub-regulatory policy, the agency continues to evaluate a disability

claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically
> determinable physical or mental impairment(s) that could reasonably be
> expected to produce an individual's symptoms, such as pain. Second, once an
> underlying physical or mental impairment(s) that could reasonably be expected
> to produce an individual's symptoms is established, we evaluate the intensity
> and persistence of those symptoms to determine the extent to which the
> symptoms limit an individual's ability to perform work-related activities for an
> adult ...

Soc. Sec. Ruling ("SSR") 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims,

2016 WL 1119029 at 2 (Mar. 16, 2016) (superseding SSR 96-7p; Policy Interpretation Ruling

Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an

Individual's Statements, 1996 WL 374186 (July 2, 1996)).[3]

> At step one of the process, "[a]n individual's symptoms ... will not be found
> to affect the ability to perform work-related activities for an adult ... unless medical
> signs or laboratory findings show a medically determinable impairment is present."
> Id. at 3. At step two, the ALJ may consider, among other things, a number of factors
> in assessing a claimant's credibility, including the levels of medication and their
> effectiveness, the extensiveness of the attempts ... to obtain relief, the frequency of
> medical contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ ... and the consistency or
> compatibility of nonmedical testimony with objective medical evidence.

---

[3] SSR 16-3P was issued after the date of the ALJ's decision in this case. However, the two-step
process substantially restates the prior two-step process set forth in SSR 96-7, which was
characterized by the Tenth Circuit as a three-step process set forth in Luna v. Bowen, 834 F.2d
161, 163-64 (10th Cir. 1987), the seminal case regarding credibility followed in the Tenth Circuit.
See, e.g., Keyes-Zachary, 695 F.3d at 1166–67.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); see 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler, 68 F.3d at 391). However, credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id.

The nature of a plaintiff's daily activities is one factor an ALJ should consider in determining the plaintiff's credibility. However, an ALJ may not rely on minimal or sporadic daily activities as substantial evidence that a plaintiff does not suffer disabling pain. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); see also Oslin v. Barnhart, 69 F. App'x 942, 948 (10th Cir. 2003). In this case, the ALJ reviewed the record and Plaintiff's daily activities to assess credibility:

> [Plaintiff states] [t]he pain has gotten worse over the past ten years, and now he cannot do anything without pain. Lying down is the only thing that helps to relieve the pain when he takes his medication … He can stand about 20 minutes and sit for about 45 minutes … He lies down on the couch or in bed 5 to 6 times a day for about an hour at a time. He has been doing that for a couple of years …

> [Plaintiff] has described daily activities … not limited to the extent one would expect, given the complaints of disabling symptoms and limitations … [Plaintiff] has reported he is able to care for his own personal needs, but has problems with dressing, bathing and using the toilet. He goes outside 1-2 times a day, drives and rides in a car for transportation and can go out alone. He can walk about 100 feet before needing to rest for 1-2 minutes. He watches television and reads on the computer. [Plaintiff] visits with friends and relatives and goes to the doctor. He goes to the grocery store with his wife …

> Throughout the pain management records, [Plaintiff] reported that he was more active and the medication was working well to relieve the pain and that he could be more active again. It must also be considered that during one of his visits, he reported that he was taking care of grandchildren since his daughter was engaged in methamphetamines.

(Tr. 71-73, 76-77). Thus, the ALJ based the findings in the decision on Plaintiff's stated daily activities and the totality of the record, and the undersigned will not recommend to disturb those findings on appeal. Cowan, 552 F.3d at 1190 (quoting Kepler, 68 F.3d at 391).

"[T]he ALJ reasoned [plaintiff's] 'allegedly limited daily activities cannot be objectively verified' … However, we have specifically held that the lack of objective verification about a claimant's allegedly limited daily activities is a proper factor in a credibility analysis. See Keyes–Zachary, 695 F.3d at 1168." Pickup v. Colvin, 606 F. App'x 430, 434 (10th Cir. 2015).

Plaintiff states the ALJ did not explain how his activities were inconsistent with allegations of back pain. (Pl. Br. at 6). The ALJ evaluated Plaintiff's testimony, prior statements, and other evidence. (Tr. 76). The ALJ noted Plaintiff's pain is "limiting, but when compared with the total evidence, it is not severe enough to preclude all types of work." (Tr. 76). "The issue is not the existence of pain or other symptoms, but whether the symptomatology experienced by [Plaintiff] is of sufficient severity to preclude him from engaging in all types of work activity." (Tr. 76).

## 2.      Plaintiff's Treatment

Plaintiff states the ALJ erred in citing the routine, conservative nature of the treatment undermined the allegations of disability. (Pl. Br. at 7). The ALJ noted "[Plaintiff] has not received the type of medical treatment one would expect for a totally disabled individual, and the treatment [Plaintiff] has received for the allegedly disabling impairments has been essentially routine and conservative in nature." (Tr. 73). The ALJ went on to further note Plaintiff "did not adequately explain at the hearing why he would stay off work for 5 years without seeking more medical treatment, such as more extensive physical therapy, epidural steroid injections, and surgery or pain management, in order to return to work. On the other hand, if that were not possible, [Plaintiff] has not been able to give a reason why he did not file a disability claim earlier." (Tr. 76).

The Tenth Circuit has found an ALJ's observation of conservative treatment supports a credibility finding.

> [Plaintiff] takes issue with the ALJ's observation that her treatment was "conservative in nature," claiming this violates the familiar principle that an ALJ may "not interpose his own 'medical expertise' over that of a physician." Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987). We disagree. An ALJ can take note of the level of treatment in assessing a claimant's credibility. See Hackett, 395 F.3d at 1173 (approving ALJ's reliance that claimant "had responded to conservative treatment" as part of credibility evaluation); 20 C.F.R. § 404.1529(c)(3)(v) (listing "[t]reatment" as one factor that may be considered when evaluating symptoms); id. § 416.929(c)(3)(v) (same).

Zaricor-Ritchie v. Astrue, 452 F. App'x 817, 823 (10th Cir. 2011). Plaintiff argues his narcotic pain medications of methadone, oxycodone, dilaudid, and valium support the allegations of disabling pain. In 2015, a Tenth Circuit case found narcotic medications were not conservative treatment, but if the medications were effective, they could be used to refute the allegation of disabling pain.

> The ALJ stated that [Plaintiff's] "treatment has been essentially routine and/or conservative in nature." Although her medical treatment was initially conservative after a 2008 workplace injury, over time conservative measures failed and extensive treatment, including a daily narcotic pain regimen, became necessary. The ALJ's conclusion about this issue is thus not supported by substantial evidence …
>
> Yet the purpose of a credibility analysis is to assess the credibility of the claimant's allegations of impairment. If medication effectively reduces the operative symptoms, that fact can weigh against the claimant. See Keyes–Zachary, 695 F.3d at 1171 (holding that the ALJ did not err in "reject[ing] [the claimant's] complaint of disabling pain because of lack of intensity" where "medical reports reveal[ed] that medications have been relatively effective, when taken as prescribed"); accord Hackett, 395 F.3d at 1173; White, 287 F.3d at 909-10.

Pickup, 606 F. App'x at 433-34. Thus, even though the ALJ was in error to deem Plaintiff's treatment "conservative," the ALJ could rely on the medical records documenting pain medication brought Plaintiff relief from symptoms. In this case, the ALJ observed:

> By February 8, 2012, the claimant reported he was doing very well and the medications had the pain well controlled … In April, his medications controlled the pain very well. [O]n May 3, 2012, … his medications were not working as well,

and he was doing "okay" on his medications, but the oxycodone was losing some effectiveness and his pain was increased overall. The Oxycodone was increased [to] 30mg. In June … he was doing okay with the change in his medication strength. On June 28, 2012, the claimant reported he did well with his medications and his pain was well controlled. He had a couple of "bad episodes" but still doing well overall. The claimant reported doing well and sleeping well with pain under control on July 26, 2012. By August 23, 2012, the claimant reported he was sleeping better and his medications were controlling the pain. His medications were helping the pain most of the time when he presented on September 20, 2012. On October 18, 2012, he reported he was doing okay with the medications, but noticed nightmares with Soma. His pain was well controlled with the medications and he had no side effects from any other medications. The Soma was discontinued and replaced with Valium 5mg. He reported sleeping well at his next visit with no side effects. The claimant returned on December 13, 2012 and reported that everything seemed to be going well, and his pain was well controlled overall. He reported he was able to function due to the medications and sleeping well. He did walk with an antalgic gait …

[T]he claimant had a good month on March 7, 2013 and he was able to remain active. On April 4, 2013, the claimant returned and his pain was stable and well controlled … On May 2, 2013, the claimant reported his pain level was 3/10…

(Tr. 74). Thus, the ALJ reviewed the record and determined the medications controlled Plaintiff's pain symptoms, and the ALJ could properly find Plaintiff could perform light work. (Tr. 76-77).

Despite deeming Plaintiff's narcotics as conservative treatment, the ALJ considered Plaintiff's improvement with the medication and that such improvement did not support Plaintiff's allegations of disabling pain. The Tenth Circuit as upheld an ALJ's RFC, notwithstanding concerns over the ALJ's credibility analysis. "While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." See Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004). Therefore, even if the ALJ erred in naming Plaintiff's treatment "conservative," the error was harmless.

Plaintiff states the ALJ incorrectly found there were numerous inconsistencies in the record. (Pl. Br. at 9). The ALJ made the following observations:

The claimant alleges that he is disabled and unable to work; however, there are numerous inconsistencies regarding the claimant's physical limitations and the objective medical evidence … These records do not support the severely escalating complaints of back pain made by the claimant, which also have other inconsistencies. For example, in the original CT scan … done in 2007 … claimant denied any radiating leg pain. However, in the [September 2012] physical consultative examination, he reported severe radiating leg pain in both legs but denied any loss of bowel or bladder control. In recent pain management treatment records, the claimant now claims pain is severe enough to cause loss of bowel control, and at the [August 2013] hearing, he complained of loss of bladder control. The imaging does not show any progression of degenerative disease. Indeed, the more recent imaging … indicates that degenerative changes are less severe than first indicated in the 2007 CT scan. Another reason to question the credibility factors is that during the [September 2012] physical consultative examination, the claimant had negative straight leg raise tests in the sitting and supine positions. There was some decrease in lumbar spine range of motion with pain, but there was nothing to indicate the severity of pain that claimant alleges. In addition, there was no notation of range of motion deficit in the hips as the claimant alleged at the hearing …

If [Plaintiff] was doing nothing as he claims in his activities of daily living reports, there should be no reason that his condition would get dramatically worse as he now claims. Throughout the pain management records, [Plaintiff] reported that he was more active and the medication was working well to relieve the pain and that he could be more active again.

(Tr. 76-77). Plaintiff states there were no inconsistencies; it was simply the progressive nature of the degenerative disc disease. (Pl. Br. at 9). However, as the ALJ stated, the objective medical evidence, i.e., the September 24, 2012 consultative examination and the August 23, 2013 CT scan, showed the disease had not progressed to substantiate Plaintiff's complaints of disabling pain. (Tr. 76).

### 3.    ALJ Review of Imaging Studies

Plaintiff states by citing the CT scans and X-rays, the ALJ relied on his own purported "medical expertise" in interpreting the imaging studies. (Pl. Br. at 8). The ALJ reviewed the imaging studies to evaluate the medical evidence in the case.

The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurological abnormalities, which would establish the existence of a pattern of pain of such severity as to prevent the claimant

20

from engaging in any work on a sustained basis. A CT scan of the lumbosacral spine was performed on October 18, 2007, finding a small left parasagittal disc herniation at L5-S1 and may have been abutting the descending S1 nerve root. The regional soft tissues appeared normal.

On May 12, 2012, another CT scan of the lumbar spine was performed which revealed broad-based disc bulge at L4-L5 which abuts the thecal sac without distortion and exiting nerve roots were preserved. There was a central disc bulge at L5-S1without distortion of the thecal sac or exiting nerve roots. The impression was mild multilevel spondylosis and degenerative facet arthrophy, and L4-L5 and L5-S1 disc bulge, with no nerve root involvement indicated.

X-rays of the lumbar spine dated June 12, 2013, show no fracture of [sic] dislocation of the lumbar spine with no appreciable degenerative disc disease, atherosclerotic vascular disease and posterior facet arthrosis of the lower lumbar spine. X-rays of the chest revealed thoracic spondylosis.

A CT scan of the lumbar spine performed on August 23, 2013, revealed vertebral body heights were preserved and alignment maintained. There was mild endplate spondylosis of the lumbar spine but no visualized sacral abnormalities. Multilevel mild facet arthropathy was seen throughout the lumbar spine. There was similar L-4 to S-1 posterior disc bulges without significant central canal stenosis or neuroforaminal narrowing. There were no paravertebral abnormalities. There were however, atherosclerotic changes in the aorta. The final impression included L4-S1 disc bulges without central canal stenosis or significant neuroforaminal narrowing, mild degenerative changes involving the lumbar spine, and atherosclerotic vascular disease …

(Tr. 75-76). In evaluating the imaging studies, the ALJ did not interpret the CT scans and X-rays as Plaintiff suggests. Instead, the ALJ reviewed the doctor's impressions from the studies. In addition, the ALJ relied on the opinions of the three state agency physicians who said Plaintiff could perform some work. Thus, the ALJ did not err in reviewing the imaging studies to determine whether objective evidence supported Plaintiff's allegations of disabling pain. However, even if the ALJ erred, since the ALJ relied on the state agency physicians who reviewed the imaging studies and Plaintiff could perform work, the error was harmless.

### 4.      Chiropractic Records

Finally, Plaintiff alleges the ALJ erroneously rejected records from Plaintiff's chiropractors. (Pl. Br. at 7). The ALJ considered the chiropractic records but found them to afford

little evidentiary value as they were from a non-acceptable source. (Tr. 73). In addition, it does not appear that the chiropractors assigned any work restrictions. See (Tr. 313-328). Thus, the ALJ was not obligated to assign weight to the chiropractic records. The Tenth Circuit analyzed this issue in the Duncan case. "Given that the ALJ did not reject the medical impairments found by [the doctor] and there were no medical opinions regarding [plaintiff's] work-related functional limitations, there was no opinion on such matters by [the doctor] for the ALJ to weigh." See Duncan v. Colvin, 608 F. App'x 566, 574 (10th Cir. 2015). As in this case, since the chiropractors did not assess any work related limitations, the ALJ did not need to weigh the records.

Moreover, the treatment records were from October 2009 through April 2010, which was not within the relevant period of November 5, 2011, Plaintiff's alleged onset of disability date, through the date the insured status expired on December 31, 2012. (Tr. 313-328). Although the ALJ may consider the longitudinal record outside the relevant period, the date of the treatment records is a factor to consider the importance to the case. The District Court of Kansas evaluated considering evidence outside the relevant period.

> [T]he regulation[s] require that the Commissioner will develop a "complete medical history for at least the 12 months preceding the month in which [a claimant files his] application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application." 20 C.F.R. § 416.912(d). Plaintiff filed his application on December 14, 2009, and consequently the agency would ordinarily have developed a medical history beginning in December, 2008. However, Plaintiff ignores that when he first filed his application, he also applied for Disability Insurance Benefits and alleged that his disability began on January 1, 2005. Therefore, in accordance with the regulations it was necessary for the agency to develop the medical history from January, 2004.

Bond v. Colvin, 2015 WL 8492031, at *3 (D. Kan. Dec. 10, 2015). Thus, even though the ALJ could (and did) consider records outside the relevant period, the date would affect the probative value of the records.

Plaintiff alleges the ALJ's decision lacks specificity. (Pl. Br. at 5, n.4). However, a review of the ALJ's findings demonstrate a thorough analysis of the record. "While we may not supply a reasoned basis for the agency's action that the agency itself has not given ... we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Adkins v. Colvin, 645 F. App'x 807, 810 (10th Cir. 2016).

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the record provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a job in the national economy.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than July 14, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the

recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on June 30, 2017.

**Gerald B. Cohn**
**United States Magistrate Judge**