UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENCIE R. MCCAUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-CV-0032-CVE-GBC |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is the Report and Recommendation (Dkt. # 16) of Magistrate Judge Gerald B. Cohn recommending that the Court affirm the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 17) to the Report and Recommendation.

**I.**

On August 6, 2012, plaintiff protectively filed an application for Title II disability benefits. Dkt. # 9, at 70. Plaintiff's application stated that he suffered from back pain and high blood pressure[1] that left him unable to work. Id. at 163. Plaintiff's claims were denied initially on October 4, 2012, and upon reconsideration on February 19, 2013. Id. at 70. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and that hearing was held on August 26, 2013. Id. at 98.

Plaintiff appeared at the hearing and was represented by an attorney. Id. Plaintiff was 51 years old at the time of the hearing and testified that he had stopped working approximately 5 years

---

[1] Plaintiff's high blood pressure is asymptomatic, and he is asserting disability based only on his back pain. Dkt. # 9, at 109-110.

earlier. Id. at 110. Plaintiff had been a self-employed plumber and licensed heating, ventilation, and air conditioning (HVAC) technician. Id. at 112. Plaintiff testified that he stopped working because he could no longer do his job due to lower back pain. Id. at 121-22. Plaintiff asserted that he was never pain free, but his medication helped. Id. at 117. Plaintiff testified that he could walk, but needed to stop and take breaks. Id. at 122-23. Plaintiff asserted that his pain had gradually increased over the previous 10 years and that now he could stand for approximately 20 minutes and sit for approximately 45 minutes. Id. at 127, 129. Plaintiff testified that he could lift a gallon of milk. Id. at 133.

A vocational expert testified at the hearing. Id. at 140. The ALJ asked the vocational expert whether a person of plaintiff's age, work history, and educational background who was limited to occasional lifting up to 20 pounds, frequent lifting up to 10 pounds, standing and walking six hours of an eight hour workday, occasional kneeling, crawling, or crouching, and no stooping, could perform plaintiff's former position. Id. at 142-43. The vocational expert testified that the hypothetical person could not perform plaintiff's past work. Id. at 143. After being asked if there were other jobs in the national or regional economy that the hypothetical person could perform, the vocational expert identified three positions that would fulfill the hypothetical: small products assembler, bottling line attendant, and production bakery worker. Id. at 143-44. Plaintiff's counsel asked the vocational expert whether those three positions required any stooping, and the vocational expert confirmed that the positions required no stooping by definition. Id. at 145.

On November 27, 2013, the ALJ issued a written decision finding that plaintiff was not disabled. Id. at 70-83. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date and that plaintiff had a severe impairment affecting his ability to work:

degenerative disc disease of the spine. Id. at 72. The ALJ further found that plaintiff did not have an impairment or combination of impairments that was equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. at 73. The ALJ then formulated plaintiff's residual functional capacity (RFC). The ALJ found the following:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift or carry up to 20 pounds occasionally and up to 10 pounds frequently, and can push or pull with either the upper or lower extremities consistent with the limitations on lifting and carrying. Claimant can stand or walk 6 hours out of an 8-hour workday and can sit for 2 hours out of an 8-hour workday or for longer periods if a full 6 hours of standing and walking is not required. In other words, the claimant has a light exertional residual functional capacity under Social Security Rules and Regulations, including 20 CFR Section 404. 1567(b). However, [claimant] cannot do work involving stooping, and only occasional kneeling, crawling, or crouching.

Id.

In formulating plaintiff's RFC, the ALJ gave "substantial weight" to the opinions of the state agency medical consultants. Id. at 76. The ALJ also followed "a two-step process," in which he first determined whether there was any underlying medically determinable physical or mental impairment that could reasonably be expected to produce plaintiff's pain or other symptoms, and second evaluated the intensity, persistence, and limiting effects of plaintiff's symptoms. Id. at 74. This second step included making a finding on the credibility of plaintiff's statements that were not substantiated by objective medical evidence. Id. The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible because there were discrepancies between his reported symptoms and the objective medical evidence in the record. Id. at 75-76. The ALJ thoroughly summarized plaintiff's treatment history, including a consultative physical examination conducted on September 24, 2012

3

by Bryan Terry Smedley, D.O., several years of visits to multiple doctors at South Pointe Pain Management, two visits in 2009 to Gerald A. Snider, M.D., and two visits in 2013 to Quality Care Medical Center. Id. at 75-79. The ALJ also reviewed the objective medical evidence contained in the record, including a 2007 CT scan of the lumbar spine, a 2012 CT scan of the lumbar spine, 2013 x-rays of the lumbar spine and chest, and a 2013 CT scan of the lumbar spine. Id. at 79-80. The ALJ afforded "little evidentiary value" to the records of two chiropractors that treated plaintiff because the records were from non-acceptable sources. Id. at 77. The ALJ determined that, based on the entirety of plaintiff's medical record, plaintiff's pain was limiting, but not severe enough to preclude all types of work. Id. at 80. The ALJ explained that the medical record did not support plaintiff's complaints of escalating pain. For example, in 2007 when the original CT scan was conducted, plaintiff denied having any radiating leg pain. In the consultative examination with Dr. Smedley, plaintiff reported radiating leg pain but denied loss of bowel or bladder control. At the hearing, plaintiff complained of loss of bowel and bladder control. However, "[t]he imaging does not show any progression of degenerative disease. Indeed, the more recent imaging discussed above indicates that degenerative changes are less severe than first indicated in the 2007 CT scan." Id. The ALJ also noted that in the physical consultative exam plaintiff had negative straight leg raise tests in the sitting and supine positions, and while there was some decrease in lumbar spine range of motion, there was nothing to indicate the severity of pain plaintiff's asserts. Id. Thus, the ALJ determined that plaintiff's allegations were only partially credible due to their inconsistency with the medical record. Id. at 81.

The ALJ concluded that plaintiff could not perform his past work as a plumber or HVAC technician, but that there were jobs that existed in significant numbers in the national economy that

the claimant could have performed. Id. at 81-82. Therefore, the ALJ found that plaintiff was not disabled. Id. at 83.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## III.

The Social Security Administration (SSA) has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." Id. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." Allen, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. See id. Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. See id.

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of his past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). Defendant bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

Plaintiff asserts that the following errors on appeal to this Court: (1) the RFC is unsupported by the third party statements; (2) the RFC is unsupported by the medical opinions in the record; (3) the RFC is internally flawed; and (4) the credibility determination is unsupported by substantial

evidence. Dkt. # 12, at 1. The magistrate judge recommended rejecting each of plaintiff's arguments and affirming the Commissioner's decision to deny plaintiff's application for disability benefits. Dkt. # 16, at 23. Plaintiff has filed a timely objection (Dkt. # 17) to the report and recommendation, and therefore, the Court reviews plaintiff's arguments de novo.

### A.

Plaintiff first argues that the RFC is unsupported by third-party statements. Dkt. # 12, at 1-2. On August 6, 2012, a SSA employee completed a form describing an in-person interview conducted with plaintiff. Dkt. # 9, at 253-255. Under "observations" the SSA employee wrote the following: "He did appear to have some difficulty standing after sitting for the interview." Id. at 254. The ALJ's decision does not mention the interview. See id. at 70-83. An ALJ is required to "consider any observations about the individual recorded by [SSA] employees during interviews, whether in person or by telephone." SSR 96-7p, 1996 WL 374186, at *5. Plaintiff argues that the ALJ erred by not considering the SSA employee's observations. Dkt. # 12, at 1-2.

The ALJ erred by not explicitly considering the observations of a SSA employee, but the error is harmless. Harmless error analysis "may be appropriate to supply a missing dispositive finding . . . where, based on the material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Fischer-Ross v. Barnhart, 431 F.3d 729, 733-37 (10th Cir. 2005) (quoting Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)) (omission in original). Here, the observation about plaintiff having "some difficulty standing after sitting for the interview" is written at the bottom of the observations section of the report following the SSA employee's observations that plaintiff had no difficulty walking, standing, or sitting. Dkt. # 9, at 254.

The most natural understanding of the SSA employee's report is that plaintiff was observed to have no difficulty walking, standing, or sitting except that he had some difficulty standing after sitting for the interview. The ALJ found that plaintiff had a severe impairment of degenerative disc disease of the spine and that plaintiff's complaints of lower back pain were partially credible. In formulating the RFC, the ALJ recognized that plaintiff is limited by back pain, just not to the extent that it precluded plaintiff from all work. The SSA employee's observation that plaintiff had "some difficulty standing" is vague, not inconsistent with the ALJ's findings that plaintiff has some lower back pain, and cumulative of other similar information in the record. See id. at 365 (record from South Pointe Pain Management noting that plaintiff remained standing during exam due to back pain). Because the SSA employee's observations are not significantly probative nor inconsistent with the ALJ's findings, there is no reason to believe that they would advance plaintiff's claim of disability had the ALJ considered them, and the error is harmless. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012); Sardono v. Colvin, No. CIV-15-291-W, 2016 WL 1618271, at *6 (W.D. Okla. Mar. 11, 2016).

**B.**

Plaintiff next argues that the RFC is unsupported by the medical opinions in the record. Dkt. # 12, at 2-4. In formulating plaintiff's RFC, the ALJ gave "substantial weight" to the opinions of the state agency medical consultants. Dkt. # 9, at 76. The initial state agency physician review of plaintiff's claim was conducted by David Bailey, M.D., who found that plaintiff was capable of performing the exertional requirements of medium work. Id. at 163-70. Kavitha Reddy, M.D., conducted a subsequent review and found that plaintiff was capable of performing the exertional requirements of light work. Id. at 172-81. Dr. Reddy's report explains that she relied on the

8

treatment records from South Pointe Pain Management, Dr. Smedley's consultative examination, plaintiff's 2012 CT scan of his lumbar spine, and plaintiff's self-reported activities and limitations. Id. at 179-80. Plaintiff asserts that the ALJ erred by relying on the opinion of Dr. Reddy because she relied on Dr. Smedley's consultative examination. Dkt. # 12, at 2-3. Plaintiff argues that Dr. Reddy could not rely on Dr. Smedley's findings because he is an otolaryngologist (ear, nose, and throat doctor) with no particular expertise in back impairments who "moonlights" as a consultant for the SSA. Id.

Plaintiff's argument conflates the increased weight that should be given to a specialist's opinion and the sufficiency of a non-specialist's opinion to support an RFC. Most of the authorities plaintiff cites support the proposition that, everything else being equal, a specialist's opinion should be given more weight than that of a non-specialist. See Dkt. # 12, at 2-3; Dkt. # 17, at 3-8. But that is not the issue here because there is no specialist who disagrees with Dr. Smedley, Dr. Reddy, or the ALJ's RFC. The issue here is whether the RFC is supported by substantial evidence, and the Court finds that it is. The ALJ formulated plaintiff's RFC after considering the opinions of two state agency medical consultants, years of medical records from South Pointe Pain Management, radiologist reports interpreting several CT scans and x-rays, a physical consultative exam, and plaintiff's self-reported activities and limitations. The RFC is not inconsistent with any of the medical opinions in the record. The evidence supporting the RFC would be stronger if Dr. Smedley were a specialist in back impairments, but given the amount of evidence and the lack of a medical opinion contradicting the RFC, the Court finds that the RFC is supported by substantial evidence.

Plaintiff also argues that the ALJ erred by failing to order a second consultative examination by a specialist in back impairments. Plaintiff's counsel did not make a request to the ALJ for an

additional examination, and "[i]n the absence of such a request by counsel, [the court] will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997). A consultative examination was not clearly necessary here because a consultative examination had already been conducted. Dr. Smedley's findings were well-supported and consistent with the record as a whole, and Dr. Smedley is familiar with the SSA and disability claims. Even though a consultative examination by a specialist in back impairments would have been more probative, Dr. Smedley's findings were reliable and relevant. Thus, an additional examination was not clearly necessary.

Plaintiff also argues that the ALJ erred by failing to consider evidence from plaintiff's chiropractors. Dkt. # 12, at 7-8. The ALJ considered the chiropractic records but afforded them "little evidentiary value" because they were from a non-acceptable source. Dkt. # 9, at 77. Although a chiropractor is not an "acceptable medical source," the ALJ was still required to explain the amount of weight given to the chiropractors' opinions. Keyes-Zachary, 695 F.3d at 1163 (citing SSR 06-03p, 2006 WL 2329939, at *6). But the ALJ did not err by failing to explain the weight given the chiropractors' opinions because the ALJ did not reject the medical impairments found by the chiropractors, and the chiropractors did not assert any opinion regarding plaintiff's work-related functional limitations. See Duncan v. Colvin, 608 F. App'x 566, 574 (10th Cir. 2015)[2] ("Given that the ALJ did not reject the medical impairments found by Dr. DePaula and there were no medical opinions regarding Ms. Duncan's work-related functional limitations, there was no opinion on such matters by Dr. DePaula for the ALJ to weigh.").

---

[2]  This and all other unpublished opinions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

## C.

Plaintiff also argues that the RFC is internally flawed because (1) the standing, walking, and sitting limitations do not comport with light work, and (2) stooping is required to perform the full range of light work. Dkt. # 12, at 4-5. The ALJ found that plaintiff could "stand or walk 6 hours out of an 8-hour workday and [could] sit for 2 hours out of an 8-hour workday or for longer periods if a full 6 hours of standing and walking is not required." Dkt. # 9, at 73. The ALJ further explained that plaintiff's RFC meant that he was capable of performing the exertional requirements of light work, except that plaintiff could not stoop and could only occasionally kneel, crawl, or crouch. Id. Light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Plaintiff's standing, walking, and sitting argument appears to rely on a misunderstanding of the RFC. Admittedly, the RFC is worded somewhat awkwardly, especially with respect to sitting. However, the clear meaning of the RFC is that plaintiff can walk or stand for up to 6 hours out of an 8-hour work day and sit the remaining time that he is not required to walk or stand. These limitations are consistent with light work. Further, plaintiff states without explanation or citation that the "RFC implies Plaintiff should be given an opportunity to alternate between sitting and standing." Dkt. # 12, at 4. Plaintiff argues that such a limitation would preclude light work. However, after careful review, the Court finds no indication in the RFC or the rest of the ALJ's decision that the ALJ implied plaintiff must be able to alternate between sitting and standing.

Moreover, plaintiff argues that a restriction on stooping is incompatible with light work. In formulating the RFC, the ALJ was clear that plaintiff could perform light work with the additional limitation of no stooping and occasional kneeling, crawling, and crouching. The ALJ never stated

that a restriction of stooping meant plaintiff could perform the full range of light work. A restriction on stooping severely limits the occupational base available to plaintiff. See Mullens v. Barnhart, 165 F. App'x 611, 614 (10th Cir. 2006) (citing SSR 96-9p, 1996 WL 374185, at *8). However, occupations exist that do not require any stooping, and therefore, "[c]onsultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." SSR 96-9p, 1996 WL 374185, at *8. The ALJ consulted with a vocational expert, who testified that plaintiff could perform jobs that exist in significant numbers in the national economy, and confirmed that the three occupations provided—small products assembler, bottling line attendant, and production bakery worker—require no stooping. Id. at 142-45; see also Dictionary of Occupational Titles (DOT) 706.684-022, 1991 WL 679050 (no stooping required for small products assembler); DOT 920.687-042, 1991 WL 687971 (no stooping required for bottling line attendant); DOT 524.687-022, 1991 WL 674401 (no stooping required for production bakery worker). Thus, the Court finds no error in the ALJ's formulation of the RFC due to "internal flaws."

### D.

Finally, plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. Dkt. # 12, at 5-10. "Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence." Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the

>  nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hutson, 838 F.2d at 1132. An ALJ must look beyond objective medical evidence in evaluating claims of disabling pain. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987). An ALJ must give specific reasons for his findings and such findings must be closely linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995). However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence"; an ALJ needs only to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required. Keyes-Zachary, 695 F.3d at 1166-67.

Plaintiff argues that the ALJ found plaintiff only partially credible based boilerplate language. Dkt. # 12, at 5. However, the ALJ based his credibility analysis on numerous specific factors. The ALJ determined that plaintiff's allegations contained "numerous inconsistencies." Dkt. # 9, at 80. For example, at times plaintiff denied radiating leg pain, and at others he asserted radiating leg pain. Similarly, plaintiff has both denied loss of bowel or bladder control and complained of loss of bladder control. Plaintiff asserts that the variations in his allegations stem from a worsening of his symptoms over time. But the ALJ determined that the CT scans and x-rays[3] did not show any progression of degenerative disease, and there was no objective medical evidence to

---

[3] Plaintiff argues that the ALJ erred in citing to his CT scans and x-rays because the ALJ was relying on his own purported medical expertise in interpreting them. However, the ALJ did not interpret any scans; there are no actual scans in the record. The ALJ cited to the radiologists' findings regarding the CT scans and x-rays. The Court finds no error in the ALJ's citation to the radiologists' findings.

support plaintiff's allegations of dramatically increasing pain and limitations. Moreover, the ALJ found plaintiff's complaints inconsistent with the findings of the consultative examination, which included a negative straight leg raise test in the sitting and supine positions, full range of motion in the hips, and a minimal decrease in the lumbar spine range of motion. The ALJ also found plaintiff's allegations of disabling pain inconsistent with the pain management records, throughout which plaintiff reported that his pain was well controlled by medication and that the medication allowed him to be more active. These reasons cited by the ALJ are specifically tied to substantial evidence in the record and are sufficient to support the ALJ's determination that plaintiff's allegations are not entirely credible.

However, there are problems with the ALJ's rationale for finding plaintiff not credible. First, the ALJ found that plaintiff's daily activities were not limited to the extent one would expect given his complaints. Some of the activities listed by the ALJ, such as driving and taking care of his grandchildren, are inconsistent with plaintiff's alleged limitations, but others, such as watching television and reading on the computer, are not inconsistent with disabling pain. See Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004) (noting that minimal daily activities do not constitute substantial evidence that a claimant does not suffer disabling pain). Second, the ALJ observed that plaintiff's treatment was "essentially routine and conservative in nature." Dkt. # 9, at 77. Plaintiff takes narcotic pain medications, and the Tenth Circuit has held that narcotics are not a conservative treatment. See Pickup v. Colvin, 606 F. App'x 430, 433-34 (10th Cir. 2015). But even though the ALJ erred by finding plaintiff's treatment conservative, he did not err by relying on the pain management records to show that plaintiff's pain is well controlled. See id. Third, the ALJ stated that plaintiff was less credible because he "did not adequately explain at the hearing why he

14

would stay off work for 5 years without seeking more medical treatment." Dkt. # 9, at 80. An ALJ may consider the level or frequency of treatment in a credibility determination, but only after considering a claimant's explanations for the inconsistency. SSR 96-7p, 1996 WL 374186, at *7. The ALJ did not ask plaintiff at the hearing why he did not seek additional treatment or file a claim for disability for 5 years. Thus, the ALJ should not have considered plaintiff's failure to seek more aggressive treatment in his credibility determination.

When an ALJ's credibility determination contains errors but is supported by substantial evidence, the district court should determine whether "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record." Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004); see also Pickup, 606 F. App'x at 432-34. Here, the ALJ supported his determination with specific evidence in the record, and when considering the credibility analysis on the whole, the errors constitute a only a small portion of the ALJ's reasoning. The credibility factors that the ALJ discusses in the most detail and at the greatest length, such as the CT scans and x-rays and plaintiff's pain management records, do not contain errors. Thus, the Court finds that the balance of the ALJ's credibility analysis in this case is supported by substantial evidence in the record. See Pickup, 606 F. App'x at 433-34 (affirming credibility analysis in which the ALJ erred by considering a narcotic pain regimen conservative and by finding the claimant had not been terminated by her employer because of her impairment when the record clearly established that she had).

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 16) is **accepted**, and the Commissioner's decision denying plaintiff's application for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 26th day of July, 2017.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE